## VANDYKE v. WEBB. (No. 6984.)

(Supreme Court, Appellate Division, First Department. March 26, 1915.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS ☞256, 268—ADMINISTRATION OF ASSIGNED ESTATE—COLLECTION OF ASSETS—OBLIGATION OF TRUSTEE.

A trustee, under an assignment in trust to collect enumerated claims due the assignor and apply the proceeds thereof to the payment of creditors and expenses of the trustee and the balance to the assignor, may sue on one of the enumerated claims, though at the time of the commencement of the action he has reason for fearing that the assignor, who alone can prove the claim, will refuse to testify, but is not warranted in assuming that there is no prospect that the assignor will testify in accordance with previous sworn statements, and expenses incurred in the action are chargeable against the estate.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 804–839; Dec. Dig. ☞256, 268.]

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS ☞306—ADMINISTRATION OF ESTATES—LIABILTY FOR ATTORNEY'S FEES—LIMITATIONS.

A trustee under an assignment for the benefit of creditors need not, for the benefit of the estate of the assignor, plead limitations against a claim of an attorney for services rendered at the request of the trustee in prosecuting claims assigned to the trustee to collect.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 890–892; Dec. Dig. ☞306.]

3. ASSIGNMENTS FOR BENEFIT OF CREDITORS ☞318—ADMINISTRATION OF ESTATES—ACTIONS—COSTS—ATTORNEY'S FEES.

Where, in an action by a trustee under an assignment of claims to him in trust to collect and apply the proceeds for the benefit of creditors was involved a difficult question of law and a large amount of property, but the principal research in the case was performed by the Appellate Division, and not by the attorney of the trustee, who obtained judgment, the attorney's compensation could not be based on the fact that a difficult question of law was involved, and an allowance based on that theory must be reduced.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. § 928; Dec. Dig. ☞318.]

4. ASSIGNMENTS FOR BENEFIT OF CREDITORS ☞390—MANAGEMENT OF ESTATES—CLAIMS OF TRUSTEE FOR SERVICES.

A trustee for the benefit of creditors of the assignor may not recover for legal services performed by him in the name of another as attorney of record.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 1152–1154; Dec. Dig. ☞390.]

5. ASSIGNMENTS FOR BENEFIT OF CREDITORS ☞391—COMPENSATION OF TRUSTEE.

Where a trustee for the benefit of creditors of the assignor settled claims due the assignor for less than the amount due, because of the refusal of the assignor, who alone could prove the claims, to assist in litigating them, and the trustee did not seek redress against the assignor for obstructing performance of the trust, but adjusted the claims with the assignor, the trustee's compensation must be limited to the usual 5 per cent. on the amount received under the settlements, and he could not reopen the claims in an action for services rendered in administering the trust.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 1155–1157; Dec. Dig. ☞391.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⬿256, 390—ADMINISTRATION OF ESTATES—ACTIONS—COMPENSATION.

Where an assignor for benefit of creditors refused to aid the trustee in the collection of claims assigned in trust to collect and apply the proceeds to the payment of creditors, the trustee could recover compensation for services and expenses incurred in attempting to collect claims, though because of the act of the assignor no recovery could be had.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 1152–1154; Dec. Dig. ⬿256, 390.]

7. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⬿256—RIGHTS OF TRUSTEE—ADVANCEMENTS TO ASSIGNOR—RECOVERY.

Where a trustee for the benefit of creditors made advancements as trustee to the assignor, on the agreement that he should retain the same out of future receipts from claims assigned, but the assignor prevented recovery on the claims, the trustee was entitled to a credit for the advancements chargeable against the estate.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Dec. Dig. ⬿256.]

8. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⬿390—CLAIMS FOR SERVICES—INTEREST.

Where an assignment for benefit of creditors did not fix the value of any of the services of the trustee in administering the estate, the court must determine the compensation of the trustee and attorneys employed by him, and interest could not be allowed thereon under the rule applicable to unliquidated damages generally.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 1152–1154; Dec. Dig. ⬿390.]

Appeal from Judgment on Report of Referee.

Action by Herbert Vandyke against James N. Webb, as sole surviving executor of William G. Wood, deceased. From a judgment for plaintiff, rendered on the opinion of the referee, defendant appeals. Affirmed on the opinion of the referee.

See, also, 150 N. Y. Supp. 1116.

The following is the opinion of Referee Norton:

This action is brought to recover for services rendered and expenses incurred by the plaintiff under two instruments of trust executed to the plaintiff as trustee by the testator of the defendant.

The first trust instrument was executed on the 23d day of April, 1896, whereby William G. Wood, the defendant's testator, assigned to the plaintiff various claims enumerated and specified in the schedule annexed to the instrument. The assignment was made to the plaintiff in trust to collect such claims and out of the proceeds to pay the cost of such collections and to retain a reasonable sum for his services as trustee and next to pay to one Rose McKenna the amount of a judgment named, with interest, and next to retain a reasonable sum for certain services and disbursements theretofore rendered and laid out by him for the said Wood, such services being described at some length in the instrument, but no value for them, or any part of them, being mentioned or suggested, and finally, after full payment of the aforesaid judgment, charges and claims, to apply the residue pro rata to the payment of claims of all creditors of the said Wood then existing, and turn over to said Wood or to his legal representatives any balance that might then remain.

The plaintiff, by the express terms of the instrument, accepted the trust created and agreed to execute the same according to the best of his ability. Among the claims embraced in the assignment were the following:

(1) A claim for restitution of moneys withheld from said Wood by the American District Telegraph Company, together with the right, title, and interest of said Wood to an action theretofore commenced by him against that

company and to any judgment which might thereafter be recovered or any settlement or compromise thereof.

(2) A claim against one David F. Porter for the recovery of moneys claimed to have been withheld by him from Wood in the matter of obtaining a loan on premises owned by Wood, and also a claim against Porter for an overcharge for a bonus or pretended bonus alleged by Porter to have been paid to the mortgagee in that transaction, and also a claim against Porter for moneys paid to him by Wood for stock of the Bank of Harlem under misrepresentations claimed to have been made by Porter to Wood as to the value of such stock and as to the solvency of the bank.

(3) Claims of Wood against the Manhattan Railway Company for damages to the fee and loss of rentals upon several parcels of real estate in the city of New York, theretofore owned by Wood, together with Wood's interest in a suit theretofore commenced on said claim and in the recovery or compromise thereof.

(4) A claim against one Elizabeth Wood for the restitution of real property or the value thereof, together with Wood's interest in a suit theretofore commenced on said claim and in the recovery or compromise thereof.

(5) A claim to certain real estate in the city of New York alleged to have been conveyed to the Riverside Bank as security for certain judgments obtained by the bank against Wood.

(6) A claim against one Virginia Wood for the restitution of four parcels of real estate on Lincoln Place, New York City, or the value thereof, alleged to have been conveyed to her by Wood under duress.

Other claims were embraced within the assignment, but as no question has been raised in regard to them, it is unnecessary to specify them, or to make any further reference to them.

The second trust instrument, executed on the 5th day of June, 1900, was confirmatory of the first instrument, and also supplemented it by adding an assignment of the claim against one James Boyd Brady for moneys loaned to him by Wood, and a claim against one Joseph Fox for any moneys which might be due Wood by reason of a reservation made by him for damages against the Manhattan Railway Company upon a conveyance by him to Fox of certain real estate in New York City.

The complaint alleges that the plaintiff duly performed all the terms and conditions of the said trust instrument to be performed on his part, but that Wood, after the plaintiff had proceeded to sue for the recovery of two of the claims mentioned in said instruments, refused to testify in such actions, and resisted the recovery, and prevented the establishment and otherwise denied the validity of such claims, and connived with the debtors to defeat the recovery thereof, whereby the same were wholly lost to the plaintiff and rendered wholly uncollectible.

The complaint further alleges that the plaintiff had collected under the said instruments the sum of $1,972.50, and had paid out in part payment of the expenses of the trust the sum of $994.04, and had paid over to Wood the balance of $978.46, and had further paid and advanced to Wood the sum of $1,089.31, which advance Wood had agreed the plaintiff should receive out of any collections from the claims embraced in the trust instruments.

The answer, among other things, alleges that the plaintiff, as trustee under said trust instruments, has never accounted for his acts under such trust, or for his administration of the trust estate, and, in addition to praying that the complaint be dismissed, asks for an accounting by the plaintiff of his acts and proceedings as trustee under the said instruments of trust and of his administration as such trustee of the trust estate.

Upon the trial before me it was established that the plaintiff, with the approval of Wood, had settled the claim against the American District Telegraph Company for the sum of $500, $50 of which had been paid to attorneys for services, and the remaining $450 had been divided equally between Wood and the plaintiff. Upon the claim against Brady, the plaintiff succeeded in collecting the sum of $997.50, while the claim against the Manhattan Railway Company he compromised for the sum of $750. These amounts, aggregating $1,972.50, were the only moneys or property he succeeded in re-

covering. It was also shown that the plaintiff as trustee had advanced to Wood in three separate payments an aggregate of $1,432.44.

The two claims in respect to which the complaint alleges that Wood refused to testify, and which he defeated by connivance with the debtors, were claims, respectively, against Virginia Wood, his wife, and against Elizabeth Wood, his stepmother. These were both claims for large amounts. The claim against Virginia Wood was to recover back properties the conveyance of which it is alleged she procured from him by duress. The claim against Elizabeth Wood was to recover an interest in various parcels of real estate which were alleged to have belonged wholly to William G. Wood, but which had been embraced through mistake in a partition of real estate made between him and her.

When the action which the plaintiff had brought against Virginia Wood was approaching trial, Wood declared that he did not intend to prosecute the same and would not testify, and that if the plaintiff were out of the way he could make a satisfactory arrangement with his wife, the defendant in the action. When the case came on for trial in October, 1902, he was not present, and it was shown by his own admission that he had gone to New Jersey to avoid being subpœnaed. It was also shown by his own testimony, given in other proceedings, that his wife gave him a monthly allowance in cash and made other gifts to him. This action against his wife could not be established except by Wood's own testimony, and upon his refusal to testify the plaintiff had to abandon his efforts to recover on that claim, and the action was dismissed by consent.

The claim against Elizabeth Wood, William G.'s stepmother, was being prosecuted in an action commenced by him before the first assignment and pending at the time. After the assignment, this action was dismissed for failure to prosecute. Wood objected to the prosecution of this claim by the plaintiff, on the ground that he believed that Elizabeth Wood would remember him in her will, and that if the plaintiff brought suit against her it would antagonize her. No further action was brought on this claim until after the death of Elizabeth Wood, and the statue of limitations was about to bar it. Then an action was brought by the plaintiff, through George Bell as his attorney, against Alicia Laird and others, as devisees under the will of Elizabeth Wood.

[1] It is contended with great earnestness by the attorneys for the defendant that this action ought never to have been brought by the plaintiff, and that if he had made a proper examination into the facts he could have ascertained that the action would be ineffectual, and, further, that when he commenced the action he did not act in good faith, as he knew in advance that he could not expect the assistance of William G. Wood, without whose testimony the action could not prevail.

I am of the opinion, however, that the plaintiff was warranted in bringing that action. It is true that, at the time he commenced it, he did have reason for fearing that Wood would refuse to co-operate with him; but, as this was one of the claims which the trust instruments made it his duty to prosecute, the only proper course for him to take was to begin an action to enforce the same before it was too late. Wood was a man of great instability of character, and it would not have been unreasonable to anticipate that when the case should come on for trial his attitude might change again. At any rate, the plaintiff would not have been warranted in assuming or inferring that there was no prospect that Wood would testify in accordance with his previous sworn statements in respect to the matter. If Wood had fully determined to withhold his support from the plaintiff and to actively aid the defendants, as he later did in his answer, he ought at least distinctly to have so notified the plaintiff. Whether the plaintiff, in view of his obligation to other beneficiaries under the trust, would have been warranted in abandoning the claim, even in the face of such notice, need not be determined; but certainly he would not have been so warranted upon a mere inference, based upon certain indications of Wood's conduct, that he would refuse to testify.

The defendant's argument that the suit should not have been commenced at all is also based upon another ground, viz., that the plaintiff could have ascertained by previous investigation that he was doomed to defeat upon the

merits. In view of Wood's earlier statements in support of the claim, however, and the questions of law involved, it cannot fairly be said that the plaintiff should have abandoned this the last claim of the entire number assigned, without a final effort to retrieve the affairs of the trust by a recovery in this matter which would, if successful, have realized a large sum.

The assertions made by Elizabeth Wood in opposition to the claim against her were, of course, interested statements, and had to be regarded at least cautiously by the trustee, and there was no indisputable evidence of record to determine the question. If he had wholly neglected to begin an action to enforce that claim, he might now be accused of negligence by the defendant for such failure, just as he is accused of negligence for failing to prosecute the claim more diligently. Furthermore, if the trustee had assumed to judge his own case as hopeless on conflicting statements, and had refrained from any action, he would have been exposed to attacks from the beneficiaries of the trust for dereliction of duty. He was in a difficult position, through no fault of his own, but through the fault of Wood, and it does not lie in the mouth of the executor of Wood to criticize him for the course he took.

[2] Another argument which the attorneys for the defendant press with great learning and ability is that no recovery can be had by the plaintiff for any liability incurred in the execution of his trust, where the statutory period of limitations had completely run against such claims before this action was commenced. The liabilities thus referred to were incurred for the services of attorneys in respect to the various claims embraced in the assignments.

On behalf of the plaintiff, it is contended that his agreement with the attorneys was that they were to be paid out of recoveries made on the various claims, and that, until such recovery, the statute did not begin to run. The plaintiff testified that such was the agreement with the attorneys; but Mr. Cantine denied that there was any such agreement as to his fees, or any agreement, and I take his testimony as establishing the fact on that point.

If the statute of limitations does apply in such a case as this, therefore, no recovery can be had for any of the services performed by Mr. Cantine, because more than the period permitted by the statute had elapsed after the completion of all his services and before this action was commenced. I do not think, however, that this is a case where the plaintiff is bound, for the benefit of the estate of William G. Wood, to plead the statute against the attorneys whom he employed, and who relied upon him to meet his obligation to them if he was ever able to do so. I do not regard this case as analogous to the large class of cases of sureties, nor the large class of cases where executors and administrators have been held bound to plead the statute of limitations against debts of the testator or decedent. These debts to Mr. Cantine are not the debts of the creator of the trust, but the debts of the trustee incurred in the administration of his trust, and indeed in the performance of the duty explicitly prescribed and laid upon him by the terms of the trust instrument, viz., the collection of the claims.

The nearest case in point that has been brought to my attention or that I have been able to find is Mathesius v. Brooklyn Heights R. Co., 96 Fed. 792, in which Judge Thomas held that in an action for breach of contract, in which the claim for damages is based on a liability incurred in reliance on such contract, the defendant cannot defend on the ground that such liability is barred by limitation. In that case the defendant, the Brooklyn Heights Railroad Company, promoted the formation of the Montague Construction Company, and contracted with such company to build a line of railway. The Montague Construction Company, in turn, contracted with the Covered Tube Cable Railway Company that the latter should employ the plaintiff to perform certain work at an agreed price, which sum the construction company undertook to pay, and the Brooklyn Heights Railway Company guaranteed performance by its construction company. Pursuant to such contract, the cable company employed the plaintiff to do the work specified at a price specified. The court held that the cable company could maintain an action for the agreed price, and that the plaintiff had succeeded to its rights. In the course of the argument the court observed that "the honorable recognition and payment of its debts is permitted to the cable company. It is not required to escape a moral obliga-

tion by shielding itself behind the statute of limitations," and that "the construction company prevented performance by the cable company, and may not visit upon the latter company all the embarrassments arising from such conduct."

[3] In determining the amount which should be allowed for the services of Mr. Cantine, I have had difficulty, because he kept no record of the time spent or of the details of the services rendered, and his memory was not good on these points. The papers preserved and put in evidence before me fall far short, in my judgment, of showing services of the value claimed by Mr. Cantine and testified to by his witnesses. In the action against Virginia Wood, in which he claims $5,000, and which amount was testified to as the reasonable value of his services, there was a difficult question of law involved, and he was successful both at Special Term and upon the appeal to the Appellate Division. I am forced to the conclusion, however, that the principal research in the case was performed by the Justices of the Appellate Division, whose elaborate opinions, reported in 60 App. Div. 208 to 221, 70 N. Y. Supp. 324, contain citations and discussions of many decided cases, none of which are cited in the brief of the respondent, which contains no authorities, except citations from two text-writers. My conclusion is that $1,000 would be fair compensation for the services shown to have been rendered in that case.

[4] With respect to the item of $600 paid by the plaintiff to his brother, Howard B. Vandyke, for legal services, I am satisfied that the amount was far in excess of the value of such services, if any, as were performed by Howard B. Vandyke. In some instances, Howard B. Vandyke's name was used as attorney of record; but all the legal services, both as counsel and attorney, were in fact performed by Mr. Cantine. In such a situation, it is manifest that the trust estate received no benefit from the use of Howard B. Vandyke's name. In other cases, the papers show that some of the work, at least, was performed by the plaintiff on behalf or in the name of Howard B. Vandyke, and, of course, no recovery can be had for legal services performed by a trustee.

With respect to compensation for the plaintiff for his services under the trust instruments, I am of the opinion that his services should be distinguished and separated into two divisions and compensated on two different theories.

[5] In the three matters in which he made collections, namely, the Brady claim, the American District Telegraph Company claim, and the Manhattan Elevated Railway claim, in which he received an aggregate of $1,972.50, his compensation should be limited to the usual 5 per cent. allowed to trustees for receiving and paying out moneys. It is true that William G. Wood may have refused to co-operate in the enforcement of some of these three claims, and, in fact, there is undisputed evidence that in the action against the American District Telegraph Company he declared his unwillingness to assist in the litigation, on the ground that he would receive nothing from it, and his determination not to testify. Inasmuch as the case could not be proved without his testimony, this attitude on his part doubtless explained the fact that one-half of the net recovery was paid to him by the plaintiff. But, if the plaintiff felt that Wood was violating his obligations arising upon the trust instruments, the plaintiff ought to have made his election at the time, and, instead of proceeding to settle the case on such terms as he could, and upon payment of such amount as he must to Wood, he should have declined to submit to such conduct on Wood's part, and to the payment of any amount to Wood, and should have sought redress against him in damages for his obstruction to the proper performance of the trust with respect to those claims, just as he is now seeking such damages against him in respect to the claims in which Wood's obstruction was wholly successful, and in which no recovery was made on behalf of the trust estate. But, having adjusted those matters with Wood at the time, he should not be permitted now to reopen them. Consequently, as to all those matters in which the plaintiff made recoveries, he should be treated as a trustee and held to the rules applicable to trust relations, both in regard to his own compensation and the compensation to be allowed for his attorneys and in regard to rules of evidence and all other respects.

[6] But in the case of those matters in which there were no recoveries made out of which the charges for the administration of the trust with respect to

152 N.Y.S.—33

such matters could be paid, I am of the opinion that the rules applicable to trust relations should not be followed, but that as to all such matters proper compensation to the plaintiff for his own services and allowances to him for expenses incurred for legal services should be awarded on the theory of damages against the defendant for breach of Wood's obligations arising out of the trust instruments and relationship. On this theory, the plaintiff should be allowed, not only for his services and expenses incurred in the two important matters the prosecution of which Wood thwarted, but also for services rendered and expenses incurred in various other minor matters in which no recovery was made, but for which services and expenses compensation. and reimbursement might have been obtained by the plaintiff out of the amounts recovered in one or both of the two actions which Wood obstructed and defeated.

It is not necessary, in determining the issues in this action, to attempt to ascertain whether one or both of such actions might have been successful, and what amounts might have been recovered, if Wood had remained loyal to the claims. Indeed, it is manifest that there is no way by which those questions can be determined now. They could have been determined only by a judicial decision upon the merits after both sides had placed their evidence before the court. The plaintiff was deprived of the opportunity of putting these two claims to such a judicial test by the act of Wood in refusing to testify in the one case, and in the other case in denying the plaintiff's claim in the answer he interposed. Under such circumstances, there is no way of doing justice. except by holding Wood's estate liable for the services which he caused other people to render in good faith upon the strength of the trust instruments he executed and the statements which he made at various times.

[7] On behalf of the defendant, it is insisted that the plaintiff is not entitled to credit for the full amount of the sums advanced by him to Wood, which advances aggregated $1,442.44. The defendant treats these advances as though the plaintiff's claim in respect to them were one on contract for the payment of money, and cites a great number of authorities in support of the proposition that in such cases the plaintiff must prove nonpayment. Those authorities are not in point, however, because the plaintiff's claim upon those advances is not one based upon a contract for the payment of money. The sums paid Wood were, by the terms of the receipts given by him, "advanced" to him by the plaintiff "as trustee." This language, in connection with the relations of the parties, plainly implies that the amounts so paid were not loans in the ordinary sense. It was not contemplated that Wood was to repay these amounts. The trustee was to retain them out of the future receipts expected to be realized from the claims embraced in the trust. Wood deprived the trustee of the opportunity of such reimbursement by defeating some of these claims, or at least by defeating the trustee's attempt to put them to a judicial test. The amounts thus advanced the trustee is now seeking to recover, not on the theory of Wood's breach of an agreement to repay, but as damages for Wood's wrongful act in depriving the plaintiff of an opportunity to secure reimbursement. Consequently the authorities bearing upon the question of the burden of proof in actions to recover money upon a defendant's promise to pay the same are not in point.

[8] I have made. no allowance of interest on the amounts which I have found as the value of the plaintiff's services and of the services of the respective attorneys in different matters. There was no agreement fixing the value of any of these services and there was no market value. It required a determination of court to establish what the defendant should pay, and consequently interest should not be allowed. Delafield v. Village of Westfield, 41 App. Div. 24, 58 N. Y. Supp. 277. This rule, applicable to unliquidated damages generally, has been frequently applied by the courts of this state to recoveries for services. Matter of Totten, 137 App. Div. 273, 121 N. Y. Supp. 942; Crawford v. Mail & Express Publishing Co., 22 App. Div. 54, 47 N. Y. Supp. 747; De Witt v. De Witt, 46 Hun, 258; Littell v. Ellison, 17 N. Y. Supp. 294.[1]

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 63 Hun, 624.

Costs I have not reported in favor of either party. If it were a case in which the award of costs was discretionary with the court, I would find that the plaintiff was entitled to receive them.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Geo. Bell, of New York City, for appellant.
Geo. Haas, of New York City, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the referee. Order filed.

---

## BLACK v. STRANG et al.

(Supreme Court, Appellate Division, Second Department. April 1, 1915.)

1. TROVER AND CONVERSION &xrarr;34—ACTION AGAINST SEVERAL DEFENDANTS—
   PROOF OF JOINT TAKING.
   Where two or more persons are sued jointly for a conversion, a joint taking must be proved.
   [Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 207–214; Dec. Dig. &xrarr;34.]

2. PLEADING &xrarr;107—ANSWER—SUFFICIENCY—MISJOINDER OF CAUSES.
   A general averment to the effect that causes of action have been improperly joined is insufficient.
   [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 228; Dec. Dig. &xrarr;107.]

3. PLEADING &xrarr;194—SPECIAL DEFENSE—DEMURRER.
   In an action against several for the conversion of personal property, an answer alleging as a separate and distinct defense that causes of action were improperly joined, in that the answering defendant did not do or assent to the acts alleged to have been done and assented to by a codefendant, and that such codefendant did not do or assent to any of the alleged acts done or assented to by answering defendant, was so much more than a mere denial of the allegations of the complaint that it might be reached by demurrer as an abortive effort to state a special defense.
   [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 444, 445, 446, 449–452; Dec. Dig. &xrarr;194.]

4. PLEADING &xrarr;136—GENERAL ISSUE.
   A general denial is always the proper way to put in issue all that plaintiff has necessarily pleaded and must prove, and defendant should never plead as a "defense" anything embraced within the general issue raised by a general denial.
   [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 284; Dec. Dig. &xrarr;136.]

Appeal from Special Term, Kings County.

Action by Eva Black against William H. Strang, impleaded with another. From so much of an interlocutory judgment as overrules her demurrer to the fourth separate defense in the amended answer of defendant named, plaintiff appeals. Reversed, and judgment allowing a demurrer to the separate defense directed.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLETON, and RICH, JJ.

---

&xrarr;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes